1817.

HAMILTON
v.
CADWALADER
and others
who survived
WILLIAMS.

{ REX and others appellants *against* REX appellee.

*Philadelphia.*

*Monday,*
December 29.

APPEAL from the decree of the Orphans' Court of the county of *Philadelphia*, confirming the valuation and appraisement of the real estate of *Jacob Rex*, deceased, in which the intestate's estate, granted on the petition of one of the heirs, that it was done without notice to the widow or other children. But it is desirable, that they call the family before them, prior to the awarding of an inquest.

Under the practice of the Orphans' Court, it is not an objection to an inquest, for partition of an

The pendency of an action of partition, is no objection to the Orphans' Court proceeding to have partition made.

Where an estate is manifestly and clearly under-valued, it is the duty of the Court to set the inquest aside; but it should be a clear case.

But when it appeared, that the jury acted under an error, in supposing, where there were seven heirs, that if the estate were divided, it must be into seven parts, and on that ground returned, that it could not be divided, and it appeared it might well be divided into fewer parts, the inquest was set aside.

It ought *to* appear with reasonable certainty, on the record, what the whole of the estate is, that is to be appraised.

following exceptions were taken on the part of the appellant.

1. Previously to the application made by *George Rex* to award an inquest, &c. a writ of partition had been issued at the suit of another of the heirs, out of the District Court for the city and county of *Philadelphia*, which writ, and the proceedings thereon, are still depending in said Court.

2. No notice of the application to the Orphans' Court was given by *George Rex*, to the widow and other heirs. And the inquest awarded were not indifferent between the parties, and several of them could have been excepted to on the part of the other heirs, on account of their well known intimacy with, and leaning to the said *George*.

3. The real estate of *Jacob Rex* consists of several distinct and separate messuages, &c. and the inquest have made a *gross* appraisement of the whole.

4. The whole are appraised at only 8,200 dollars, whereas the property is assessed at 10,300 dollars. A person has offered to give for it from 10 to 12,000 dollars, and twice the amount of the appraisement has been offered for it within the last 12 months.

5. One of the inquest has declared, that he appraised the estate under the mistaken idea, that it was subject to the widow's dower.

6. The inquest fixed the appraisement by each individual putting down a sum; and the gross amount being divided by the number of the inquest, the quotient was returned as the appraisement.

7. Part of the intestate's real estate, *viz.* several *ground rents*, have not been divided.

8. The property ought to appear in some part of the record, described with certainty.

The case was argued by *Meredith* and *Condy*, for the appellants, and by *E. S. Sergeant* and *Chauncey*, for the appellee.

Tilghman C. J. This is an appeal from the Orphans' Court of *Philadelphia* county. *Jacob Rex*, father of all the parties, died intestate, seised of several parcels of land. *George*, the eldest son, petitioned the Orphans' Court for

an inquest to make partition of the father's real estate. An inquest was awarded, who made a return, to which the appellants made several exceptions. These were overruled by the Court, in consequence of which an appeal was taken.

In this Court, the appellants took eight exceptions to the proceedings below; but as several of them were abandoned in the argument, I shall confine myself to those which were insisted on.

1. The Orphan's Court awarded an inquest, on the petition of *George. Rex*, without notice to the widow or other children. It appears, that a very irregular practice has crept into the Orphans' Courts. They generally award an inquest as a matter of course. The act of assembly directs, that upon the petition of the widow, or any child, the Court shall appoint seven or more persons chosen on behalf or with the consent of the parties, to make partition; or where the parties cannot agree, to award an inquest to make partition. The Courts, in many of the counties, have considered the exhibition of a petition for an inquest, as amounting to a dissent to the choice of seven or more persons. And as any one of the parties may dissent to a choice, and insist on an inquest, the Courts, in order to save time, have thought themselves justified in awarding an inquest immediately. It certainly would be more analogous to the rules almost universally established in judicial proceedings, either in law or equity, to call the parties into Court in the first instance. And if that were done, I doubt not but they would often agree in the choice of men, and thus, some expense would be saved. But as I do not know, that substantial injustice has been done, and many titles must depend on the proceedings which have taken place under the act of 19th *April*, 1794, I should not think myself warranted in disturbing them. I understand, that on the return of the inquest, every exception is open, which might have been made, before it was awarded. Nevertheless, as the Orphans' Courts may alter their practice *in future*, without affecting any thing which is *past*, I cannot help expressing a wish, that they would call all the family before them, prior to the award of an inquest. I am satisfied that good would often arise from it.

2. It is objected, that the Orphans' Court ought not to have proceeded, because an action of partition was depend-

ing in a Court of common law. I am very clear, that the pendency of an action of partition, was no objection to the Orphans' Courts proceeding. The proceedings in the two Courts are essentially different. The act of assembly expressly provides for partition in these cases, and it shall not be in the power of either party to defeat the act, by recurring to a writ of partition at common law. It would, in fact, be, to repeal the act, so far as respects partition.

3. and 4. " The estate is undervalued; and it is valued in " gross, instead of being divided into several parts."

Where an estate is manifestly and greatly undervalued, I have no doubt, but it is the duty of the Court to set aside the inquest. But it ought to be a clear case. The jury are entrusted by law, with the valuation, and they act upon oath. Besides, it is generally to be supposed, that they are better judges of this matter, than the Court. Great regard, should, therefore, be paid to their opinion. Sometimes, however, it happens, that they mistake, and the Court may be able to trace the cause of it. The evidence in this case, is contradictory, and I have seldom known it otherwise, where *value* was the question. Supposing this estate to be appraised *in gross*, I should not think the evidence by any means warranted the setting aside of the inquest for undervaluation.

The great objection to the proceeding is, that it was valued in gross. It is true, that the question of division, is also committed by law to the jury; and where they have fully comprehended their duty, and passed their opinion on the subject, I should be loth to disturb it, except in a clear case. But, I have great doubt, whether this jury did clearly understand the nature of the question on division. The intestate left seven children, and from the evidence of the sheriff, (on which I place great reliance, because he must be quite impartial, not having given any opinion on the subject,) I cannot help thinking, that some of the jury supposed, they were to inquire, whether the estate could, without spoiling it, be divided into *as many parts as there were children;* and that if this could not be done, they were to estimate its value in gross. The sheriff says, the question considered by the jury, was, whether the land could be divided according to *the command of the writ.* But, in explaining what that command was, he seemed to suppose, that the number of children was the point to which they were to look. Under this aspect,

the jury must certainly say, that the estate would not bear a division. But had they known, that if it would afford accommodation to even *two* of the children, it was their duty to say so, the result of the inquest might have been very different. Supposing then, that some of the jury acted under an error, (for I do not suppose it was the case with them all) we are naturally led to consider what their opinion might have been, had they understood that the property might have been lawfully divided into less than seven parts. In the first place, there are two dwelling-houses, with a garden and proper appurtenances to each; then, there is an extensive front on the turnpike road, in a county so thickly settled, that it may be called a village. There is, besides, a four acre lot, on the opposite side of the road, fronting also on the turnpike. The land altogether amounts to about 34 acres. Under all these circumstances, it seems extraordinary, that it should admit of no division. I am apt to think, that the attention of many of the jury was too exclusively turned to a *farm;* they thought it would make one good farm, and not more. But it is worthy of consideration, whether it might not to be divided, to great advantage, without a view to a farm. A front on the road, with a few acres attached to it, might make a very good establishment, for other purposes than farming. It is a matter of very great importance to the widow and younger children; and the eldest son can have nothing to complain of, if the case undergoes the consideration of another jury. The law did not intend to give the least preference to the eldest son. But as the estate must go to one, in case it will not bear a division, it was most natural to offer it first to the eldest; not, however, with a view to his profit, because, if the estate was justly valued, he would have no more than an equal share. Under these impressions then, which I have, with respect to a misconception of some of the jury, I feel myself bound in conscience to say, that this inquest ought not to stand. Other exceptions were taken, which it will not be material to discuss very minutely. It is proper, however, that they should not be passed over, because the Court's opinion, expressed now, may save trouble in future. The petition of *George Rex* was defective, in not stating the amount of certain ground rents; the consequence is, that we are at this moment uncertain, if we judge only from the records, whether these ground

rents were valued by the jury or not. From what has passed in Court, during the argument, I presume they were not valued. ˙When the business is taken up again, this defect may be cured. It ought to appear, with reasonable certainty, on the record, what the estate is, which is appraised. In the present instance, the defect is of little consequence, these rents not amounting in the whole, to the yearly sum of three dollars, and the eldest son having offered to give them up to the rest of the family. I do not ground my opinion for reversing the proceedings on that defect; though a defect it certainly is. Its minuteness would enable me to get over it. But the valuation in gross, is a serious matter. On that account alone, I am of opinion, that the inquisition should be set aside.

GIBSON J. expressed his concurrence.

DUNCAN J. The appellants have filed exceptions to the confirmation of the inquisition on the real estate of their father, *Jacob Rex*, executed on the petition of *George Rex*, the eldest son of *Jacob*, under the intestate laws. The Orphans' Court confirmed the valuation.

The first exception has been satisfactorily answered. For with respect to the partition of intestates' estates, the law has directed a particular course of proceeding, in a Court of peculiar jurisdiction; proceeding in a course unknown to the common law, vesting in the co-parceners certain rights different from those they would acquire under a writ of partition. Among other differences, I instance the right of election in the eldest male, and so on, to all the males in succession; to the eldest females, and to all other females in succession. Whereas, where the inquest return on a writ to make partition, that the land cannot be divided without injury to and spoiling the whole, and one or more of the parties shall elect to take the lands at the appraised value, the Court make the election; for they are to determine, to whom the lands shall be conveyed. And the act of 22d *April*, 1794, declares, that to prevent any doubts which may thereafter arise concerning the manner in which the partition of intestates' estates may be executed, &c.; and then directs the manner.

The second is as to the want of notice of the intended application. The law has not directed citation or subpœna; nor required notice. Nor would it seem to me that any injus-

tice could be done to the parties. For on the return of the inquisition, the objection might be made, that the intestate did not die seised of the whole, or any part of the land, but had conveyed it to one of the parceners ; and in that case, the Court would direct an issue to try the fact, and would suspend the confirmation until this fact was ascertained ; and this has been the general practice.

The third is an objection of greater solidity. The real estate of *Jacob Rex* is stated in the petition of the appellee, to consist of several messuages and tenements, and pieces of land, separately and distinctly described. Sufficient appears to satisfy my mind, from a consideration of the whole evidence, that the inquest did not distinctly consider and determine how far these estates would accommodate one or more of the children, without injury to, and spoiling of the whole, but generally, that it could not be divided among all without injury. It well might be, that it would not divide into seven parts, and yet divide into two or three, and thus accommodate more than the eldest. The weight of the testimony goes to shew, that in coming to this conclusion, some of the jury were influenced by the consideration, that as a farm a division would injure it. But this was an incorrect view of the subject. For on this turnpike road, a continued village from *Philadelphia* to the land, it is difficult to suppose that it could not be divided, at least into two parts, leaving mansion houses, and all other necessary accommodations for each. In this way it appears to have been occupied by the intestate in his lifetime, and, since his death, has been so let out by his descendants. The Orphans' Court proceed on Chancery principles ; and if it appears the inquest acted on erroneous principles, or if it appeared there was a great inequality in the division or valuation, their powers are sufficiently extensive to afford relief. A court of equity would relieve in case of unequal partition. 16 *Vin.* 241. 1 *Fonbl.* 17, and so would a court of *law.* 16 *Vin.* 229. *Dyer,* 73. It would be giving to an inquest a sanction beyond that of a verdict in Court, to decide, that whatever might be the mistake of the inquest, it was beyond the controul of the Court.

Fourth objection. As to what inadequacy in the valuation should cause an Orphans' Court to set aside an inquisition, it is difficult to lay down any general rule. But the inadequacy here accompanied by the offer of the guardian of

the minor children, to advance 1,800 dollars, is not to be thrown out of our consideration. It forms an ingredient. Add to it the conduct of at least two of the inquest; *Carpenter*, who, to raise it, put in his ticket for 14,000 dollars, and *Morgan*, who put in his for 5,000 dollars, to lower it; and although this was but an experiment, not finally acted upon, yet it serves to shew the strong inclination of these two gentlemen at least; and to create more than a doubt that justice has not been done.

The fifth is not supported by any evidence.

And the sixth is altogether without foundation. The inquest is not subject to the imputation.

Another objection is now, for the first time, made; and this respects the ground rents. The petition states, that *Jacob Rex* died seised of several ground rents, the particulars of which, the petitioner says, he is not able to state. Under the proceedings founded on the intestate laws, it is incumbent on the petitioners to bring the whole real estate before the Court. There cannot be several inquisitions of it by parcels. For then the inquest could not accommodate the children with as many portions of the whole estate, as it might be capable of accommodating them with. Besides, by thus dividing it into parcels, the right of election in the eldest son, might be extended to every parcel. Whereas, the intention of the legislature was, to accommodate as many of the children as possible, as far as was consistent with the whole estate, without injury to or spoiling of the whole. There is to be, for this purpose, but one inquisition; and that is to be of all the lands, tenements, and hereditaments, in the county, by the act of 19th *April*, 1794. Besides, though the fact is, that the inquisition never took into their consideration the ground rents, yet it is left doubtful by the return, whether they did not value and appraise the whole real estate of *Jacob Rex*. This matter ought not to be left doubtful on the record, and to depend on the examination in future controversies of the jury, what estates they had in fact acted upon. The small value of the ground rents cannot change the law; nor does it appear, that any difficulty lay in the way of *George Rex* in procuring an exact statement of these rents. It is not too late to make this exception, on this appeal. It is the duty of the Court to inspect the whole record, and examine whether there be error or not. The whole record is before them, on which they are to

decide; besides, in proceedings on appeal, all matters are 1817.
heard *de novo*. I am of opinion, therefore, that this inquisi-   Rex
tion be quashed.                                               and others
                                                                   *v.*
                                                                 Rex.

Inquisition quashed.